UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ABDUL-AZZIZ RAZZAK, JR.,

    *Plaintiff*,

v.

EXCALIBUR ASSOCIATES, INC.,

    *Defendant*.

Civil Action No. 23-3557 (TJK)

**MEMORANDUM OPINION & ORDER**

Abdul-Azziz Razzak, Jr. accepted an offer to work as a part-time security officer for Excalibur Associates, Inc. Shortly after the company hired him, Razzak asked for a religious accommodation permitting him to maintain a full beard as required by his Islamic faith. Excalibur eventually rejected his request in April 2022. Although Razzak received over $1,500 for participating in training, he never obtained an accommodation for his beard and never worked an official post-training shift as a security officer for the company. In June 2022, Excalibur released Razzak from his part-time position.

Razzak now sues Excalibur for discrimination and retaliation under Title VII of the Civil Rights Act of 1964. Excalibur responds that his claims are subject to the collective-bargaining agreement's mandatory grievance-and-arbitration process, so it asks the Court to dismiss them and compel arbitration. But Razzak's statutory claims are distinct from any contractual claims he might have possessed for violations of the bargaining agreement. And because that agreement does not clearly and unmistakably require employees to submit Title VII claims to the grievance process, the Court will deny Excalibur's motion to compel arbitration.

I.      **Background**

Razzak is a career security officer. ECF No. 1 ("Compl.") ¶ 17. He is also a devout Muslim whose religious beliefs require him to maintain a full beard at least as long as a clenched fist. *Id.* In January 2022, Excalibur—a federal contractor providing security services to government agencies—offered him a job as a part-time security officer at the headquarters for the United States Department of Agriculture. *See* ECF No. 8-2 at 6. Razzak accepted this offer later that month. *See id.* at 8. Although his "first regular day of work was scheduled for April 26, 2022," *id.* at 3, he completed several onboarding tasks and was paid to participate in training before then, *id.* at 51, 53; Compl. ¶ 22. Excalibur's internal human-resources system listed Razzak as an "active" employee as of April 7 at the latest. ECF No. 12-1 at 4; *see also id.* at 67.

The offer letter that Razzak signed explained that his position was "covered by the [United Government Security Officers of America International] Union Collective Bargaining Agreement" ("the CBA"). ECF No. 8-2 at 6. Excalibur entered the relevant bargaining agreement with the security officers' union in October 2020. *See* ECF No. 9-3 ("CBA") at 3, 40. In doing so, Excalibur agreed to recognize the union as "the sole and exclusive bargaining agent representing all Full-Time and Part-Time Special Police Officers . . . and Security Officers . . . employed by [Excalibur] in service to the United States Department of Agriculture." *Id.* § 1.1(A). All "[e]mployees in th[at] bargaining unit," the CBA explains, fall within the definition of "[e]mployee" for purposes of the agreement. *Id.* § 1.1(B). Further, the CBA establishes a "grievance procedure" that operates as "the exclusive process for the resolution of all grievances," which the CBA defines in two ways: (1) "a claimed violation, misinterpretation[,] or misapplication of any provision of this Agreement," or (2) "the challenge of any disciplinary action taken against a Union Employee." *Id.* § 5.1. Grievances that remain "unsettled" after a multi-step dispute-resolution process "may be processed to arbitration by the Union." *Id.* § 5.4.

Beginning in March 2022, Razzak tried to obtain a religious accommodation permitting him to maintain his full-length beard despite Excalibur's no-beard policy. *See* Compl. ¶¶ 23–30. He claims that a contract manager informed him in early March that "they would work on" the request, which "should not be a problem." *Id.* ¶ 24. In mid-April, Razzak told the contract manager that because the "higher ups" had yet to clear the facial-hair accommodation, he would not "be able to start right away." ECF No. 15-1 at 1. The next day, a project manager told Excalibur's vice president of human resources that Razzak had requested an accommodation for his beard. ECF No. 8-2 at 55. The vice president emailed Razzak on April 20, explaining that Excalibur "cannot approve the request"; a full-length beard "would conflict with [Excalibur's] mandated security requirements," and accommodating Razzak's "request would create an undue hardship on the business." *Id.* at 62. Excalibur released Razzak from his part-time employment about two months later. *Id.* at 3; Compl. ¶ 30.

Towards the end of 2022, Razzak filed a complaint with the Equal Employment Opportunity Commission based on Excalibur's rejection of his accommodation request. Compl. ¶¶ 34, 38. While waiting for a right-to-sue letter, Razzak's counsel told Excalibur in August 2023 that Razzak would not pursue his claims through the CBA's grievance process. ECF No. 8-3 at 2. Excalibur sued Razzak in Maryland state court a few weeks later, seeking reimbursement for the cost of his training sessions and equipment. Compl. ¶¶ 36–38. The Montgomery County District Court apparently dismissed that case in early 2024. *See Excalibur Assocs., Inc. v. Abdul-Azziz Razzak, Jr.*, D-06-CV-23-018191.

True to his word, Razzak sued Excalibur after receiving his right-to-sue letter. He brings four claims under Title VII: two for discrimination, one for retaliation, and another for constructive discharge. *See* Compl. ¶¶ 41–85. Excalibur moves to compel arbitration under the Federal

3

Arbitration Act, 9 U.S.C. §§ 1 *et seq.*

## II.   Legal Standard

The Federal Arbitration Act "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). To enforce that contract, a litigant may petition for an order compelling arbitration under the terms of the agreement. *See* 9 U.S.C. § 4. "[T]he standard for resolving summary judgment motions under Federal Rule of Civil Procedure 56(c)" applies to such motions to compel. *Shatteen v. Omni Hotels Mgmt. Corp.*, 113 F. Supp. 3d 176, 179 (D.D.C. 2015) (citing *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008)). If the Court determines that the parties agreed to arbitrate the disputed claim, it "shall make an order directing the parties to proceed to arbitration." 9 U.S.C. § 4. Specifically, the Court asks "whether there is a valid agreement" and, if so, "whether the specific dispute falls within the scope of the arbitration agreement." *Johns v. Newsmax Media, Inc.*, 887 F. Supp. 2d 90, 97 (D.D.C. 2012). "[S]ummary disposition of the issue of whether or not" the parties agreed to arbitrate the claim "is appropriate only if there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Aliron Int'l*, 531 F.3d at 865 (internal quotation marks and citations omitted).

## III.   Analysis

Excalibur contends that the CBA bound Razzak when he accepted employment with the company on January 23, 2022—or, at the very latest, when he started working on April 1 of that year. ECF No. 12 at 2, 4. The company adds that Razzak, once bound, had to "arbitrate any employment related claims . . . against" it. ECF No. 8-1 at 1. Razzak disagrees on both scores. He says that he was never subject to the CBA; the offer letter references his first day "working," but Razzak did not advance past training given the denied accommodation request. ECF No. 9-1 at 14; *see also* ECF No. 15 at 3–5. And even if the CBA did bind him, Razzak contends that the

mandatory grievance procedure does not cover his Title VII claims with the required level of clarity. ECF No. 9-1 at 8–10. Finally, Razzak tacks on several arguments related to the state-court suit that Excalibur filed against him, which he believes prevents the company from compelling arbitration now. *See id.* at 10–15.

The Court need not decide whether the CBA bound Razzak. Even if it did, his Title VII claims are subject to the mandatory grievance procedure only if the agreement clearly and unmistakably requires that he submit those claims to that process. The CBA, though, could be read to cover only contractual discrimination claims. So the Court will deny Excalibur's motion.

A collective-bargaining agreement may require that employees resolve statutory claims through arbitration rather than litigation. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 257–58, 273–74 (2009). But it may do so only if the "CBA requirement to arbitrate" the "statutory claim" is "clear and unmistakable." *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 79–80 (1998). The question here, then, is "whether the collective bargaining agreement clearly and unmistakably requires [Razzak] to use the grievance and arbitration procedure to resolve his [Title VII] claim[s] rather than skipping over that process and proceeding directly to court." *Vega v. New Forest Home Cemetery, LLC*, 856 F.3d 1130, 1134 (7th Cir. 2017). The waiver of the judicial forum, moreover, must cover the "federal statutory claims" that he raises; it is not enough for the agreement to require arbitration of "overlap[ping]" contractual claims, which remain "conceptually distinct" from statutory causes of action. *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 51 (1st Cir. 2013) (citation omitted). In other words, an employee "subject[] to discriminatory treatment" and bound by a collective-bargaining agreement may "hold two similar claims, one based in statute, and one based in contract." *Ibarra v. United Parcel Serv.*, 695 F.3d 354, 358 (5th Cir. 2012) (citation omitted). And that employee loses his right to bring statutory claims in court only if the agreement

clearly and unmistakably "require[s] submission of" *those specific* claims to arbitration. *Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1207 (10th Cir. 2011). A bargaining agreement that "*could be* interpreted to" cover "disputes under the CBA and not claims under antidiscrimination statutes" does not meet this standard. *Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81, 85 (2d Cir. 2016) (emphasis added).

The CBA does not clear this high bar. Article V, the "Grievance Procedure," requires only that "grievances" proceed through the grievance process. CBA § 5.1. And only two kinds of disputes qualify as a grievance: (1) "a claimed violation, misinterpretation[,] or misapplication of any provision of" the CBA, or (2) "the challenge of any disciplinary action taken against a Union Employee." *Id.* Excalibur hardly contends that the second definition clearly and unmistakably applies to Razzak's statutory claims. Although the company gestures at that clause in its reply brief, *see* ECF No. 10 at 4, Excalibur offers no reason to construe the second type of grievance as covering Title VII claims. This definition of grievance "nowhere reference[s]" claims under that statute or, for that matter, under any statute. *Cloutier v. GoJet Airlines, LLC*, 996 F.3d 426, 436 (7th Cir. 2021). Nor does it cross-reference another provision that might provide the required clarity about statutory claims. Finally, this clause applies only to disciplinary actions against "*Union* Employee[s]," suggesting that it may not even cover Razzak, who claims that he never joined the union. CBA § 1.6 (emphasis added). For these reasons, and because Excalibur offers no meaningful argument to the contrary, Razzak's Title VII claims do not clearly and unmistakably fall within the second definition of "grievance."

Whether the first definition covers those claims is a more complicated question. But the clear-and-unmistakable standard tips the scales in Razzak's favor here too. The CBA explains that a grievance means a violation or misinterpretation "of any provision of *this Agreement*"—not of

federal statutes generally or Title VII specifically. CBA § 5.1 (emphasis added). So while the "arbitration provisions do contain general grievance procedures," they "define 'grievances' as disputes or concerns arising out of . . . the CBA[]" itself and "do not mention the employees' statutory claims." *Manning*, 725 F.3d at 53. Another provision also underscores the focus on contractual claims by requiring that "[a]ll grievances . . . set forth . . . the *provisions of the Agreement* alleged to have been violated." CBA § 5.3 (emphasis added). And the penalty for not complying with this rule is steep: the grievance "shall be deemed waived." *Id.* That makes sense for a mandatory grievance procedure designed to resolve contractual claims based on CBA violations because Excalibur would want to know what parts of the contract the employee thinks were violated. But these provisions do not include a similar requirement for any statutes that were allegedly violated. At bottom, Article 5 repeatedly references contractual claims without "mention[ing] statutory claims." *Nealy v. Shelly & Sands, Inc.*, 852 F. App'x 879, 882 (6th Cir. 2021). So its provisions do not unmistakably waive Razzak's right to a judicial forum for his Title VII claims. *See, e.g.*, *Ibarra*, 695 F.3d at 356–57 (Title VII claims not subject to grievance procedure covering "any controversy, complaint, misunderstanding or dispute arising as to interpretation, application or observance of any of the provisions of this Agreement"); *Cloutier*, 996 F.3d at 436 (statutory claims not subject to grievance procedure covering "dispute[s] between the parties arising under the terms of this Agreement").

No matter, says Excalibur, because the CBA's general anti-discrimination provision picks up the slack, in part by incorporating Title VII into the CBA. Section 1.6, which does not reference the grievance procedure or arbitration, states that "[t]he parties agree that there will be no discrimination against any employee . . . because of" several protected characteristics, including "religion." That provision further obligates Excalibur to "comply with all federal and state (where

7

applicable) employment discrimination laws, which are incorporated herein in their entirety." CBA § 1.6.

This anti-discrimination language in the CBA, even paired with the grievance provisions, does not clearly and unmistakably waive a judicial forum for Razzak's *statutory* Title VII claims. To start, courts often hold that anti-discrimination clauses are not enough to meet this standard. Anti-discrimination language that merely "reference[s] statutory law" may "define the discrimination that is prohibited," but it does "not" specify "the type of dispute (statutory rather than just contractual) that is subject to arbitration." *Lawrence*, 841 F.3d at 85.  That is, a collective-bargaining agreement may use phrases such as "in violation of any federal or state law" to establish the contours of a *contractual* right to be free from discrimination. *Ibarra*, 695 F.3d at 357. But that drafting choice is not, standing alone, an "express waiver of a judicial forum" for *statutory* claims, particularly when—as here—the anti-discrimination provision "mentions no specific federal or state statutes and makes no reference to the grievance procedures set forth" in a different part of the bargaining agreement. *Id.*; *see also Nealy*, 852 F. App'x at 882 (explaining that "[t]he presence of an antidiscrimination clause, on its own, did not require . . . arbitrat[ion of] statutory claims" when neither the arbitration clause nor the anti-discrimination clause "refer[red]" to the other).  "Simply put, including a provision in a collective bargaining agreement that prevents discrimination against employees under a federal statute is not the same as requiring union members to *arbitrate* such statutory claims." *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 631–32 (6th Cir. 1999) (internal quotation marks and citation omitted).

Excalibur argues that this anti-discrimination clause does more than many others because it includes a provision expressly incorporating "all federal and state (where applicable) employment discrimination laws." CBA § 1.6; *see also* ECF No. 10 at 4–5.  For support, it points to

8

*Singletary v. Enersys, Inc.*, where the Fourth Circuit said that an "additional provision[] mandating 'explicit incorporation of statutory anti-discrimination requirements'" can "make[] it unmistakably clear" that an arbitration clause covers claims arising under the "discrimination statutes at issue." 57 F. App'x 161, 163 (4th Cir. 2003) (citation omitted).  That case and others like it draw on the Supreme Court's observation that the disputed collective-bargaining agreement in *Wright* "contain[ed] no" such "explicit incorporation." 525 U.S. at 80.  Although Excalibur does not expressly lay out this reasoning, the idea seems to be that the incorporation clause makes certain statutes part of the CBA, meaning that any violation of those laws is also a violation of the CBA subject to the mandatory grievance-and-arbitration process.

This argument has surface-level appeal.  But whether a bargaining agreement contains an incorporation clause does not necessarily answer the key question: does the agreement clearly and unmistakably require an employee to bring *statutory* claims through a grievance procedure rather than in court?  No doubt, the incorporation of statutory law may help an agreement meet this "exacting standard." *Lawrence*, 841 F.3d at 84.  Indeed, the Supreme Court's acknowledgment that the bargaining agreement in *Wright* did not explicitly incorporate anti-discrimination statutes suggests that a "clear and unmistakable incorporation" may contribute to the clarity of an arbitration requirement. 525 U.S. at 80–81.  But that was not all the Court said on this score in *Wright*.  It also explained that "[e]ven if" a provision of a collective-bargaining agreement "incorporate[s]" statutory law "by reference," that incorporation merely "create[s] a *contractual* right that is coextensive with the federal statutory right." *Id.* at 79 (emphasis added).  Thus, the Court at least implied, more is needed for an agreement to clearly and unmistakably subject a statutory claim to arbitration.  Two reasons caution against reading *Wright* as standing for the hard-and-fast rule that *any* incorporation of statutory law satisfies the clear-and-unmistakable standard.

9

First, the inquiry turns on the clarity of the arbitration requirement as to "both statutory and contractual . . . claims," *14 Penn Plaza*, 556 U.S. at 264, not on incorporation alone stripped of its context. "[T]he north star of [the] analysis is whether the waiver" of a judicial forum "is 'clear and unmistakable.'" *Cloutier*, 996 F.3d at 438. In this way, "*Wright* requires nothing more than what it says" and permits nothing less; it does not "prescribe any bright-line approach" or focus on "magic words." *Darrington v. Milton Hershey Sch.*, 958 F.3d 188, 194 (3d Cir. 2020). While *Darrington* found the contractual waiver in that case to be clear and unmistakable, the flip side of the Third Circuit's reasoning there is that *Wright* does not bless a bargaining agreement's waiver just because the agreement uses the "magic words" of incorporation. What matters is whether the "agreement, interpreted according to applicable contract-interpretation principles, clearly and unmistakably waives a judicial forum for statutory claims." *Id.* And nothing about this CBA's incorporation of "federal and state . . . employment discrimination laws"—in a section separate from the grievance provisions—inherently meets that demanding standard. CBA § 1.6.

Second, as the Court in *Wright* recognized, statutory and contractual claims are different even when their contours overlap. When a plaintiff brings a statutory claim, after all, "[t]he cause of action [he] asserts arises not out of contract, but out of the [statute], and is distinct from *any* right conferred by the collective-bargaining agreement." *Wright*, 525 U.S. at 79 (emphasis added). So it is not enough to "mak[e] the nondiscrimination rights guaranteed by the CBA coterminous with those under federal and state law." *Ibarra*, 695 F.3d at 358. As *Wright* explains, incorporating a statute "by reference" may "creat[e] a contractual right that is coextensive with the federal statutory right," but that does not "alter[]" the "statutory (as opposed to contractual) focus of [a plaintiff's] claim." 525 U.S. at 79. An employee like Razzak still "has statutory as well as contractual rights." *Vega*, 856 F.3d at 1133. And there is a "distinction between those categories of

10

rights vis-à-vis his obligation to resort to the grievance procedure," *id.*, unless the bargaining agreement clearly and unmistakably subjects both sets of claims to that procedure. As a result, "the decision to arbitrate an employee's *contractual* claim by itself neither waives nor precludes subsequent litigation of *statutory* claims arising out of the same underlying facts." *Mathews*, 649 F.3d at 1205. Put another way, because "a contractual dispute is not the same thing as a statutory claim, even if the issues involved are coextensive," *Lawrence*, 841 F.3d at 85, it is a "logical jump" to conclude that a "CBA cover[s] statutory claims" just because "the parties acknowledged that violations of statutory law would *also* constitute violations of the contract," *Mathews*, 649 F.3d at 1206 (reversing district court for making such a leap).

The upshot is that, at a minimum, a clause incorporating statutes and saying that an employer agrees to comply with them—as this CBA does, *see* § 1.6—provides an employee with a contractual claim he would not otherwise possess. But that incorporation, without more, does not necessarily mean that the employee's *statutory* claims are merged with the contractual claims for purposes of the agreement's grievance provisions. Rather, "contractual rights under a collective-bargaining agreement and the statutory right provided by Congress under Title VII 'have legally independent origins and are equally available to the aggrieved employee.'" *Int'l Union of Elec., Radio & Mach. Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 236 (1976) (citation omitted). So even when a bargaining agreement makes the "contractual guarantees against discrimination precisely coterminous with those given in federal law," covered employees still "hold two similar claims[:] one based in statute, and one based in contract." *Mathews*, 649 F.3d at 1206.

Given all the above, the incorporation language and the grievance provisions in this CBA do not clearly and unmistakably subject Razzak's statutory claims to the mandatory grievance procedure. True, the incorporation of employment-discrimination laws may mean that a claimed

11

violation of Title VII will often provide the basis for a claimed violation of "th[e] Agreement" too. CBA § 1.6. But as explained, those claims—and the rights they seek to vindicate—remain distinct. And the grievance provisions here "could be interpreted to" apply to "disputes under the CBA and not claims under antidiscrimination statutes." *Lawrence*, 841 F.3d at 85. After all, the mandatory grievance procedure covers "claimed violations . . . *of this Agreement*," CBA § 5.1 (emphasis added), but never mentions violations of or claims "*under* statutes," *Lawrence*, 841 F.3d at 85 (emphasis added) (explaining that a non-discrimination provision's reference to "disputes under this provision" did not "suggest that statutory discrimination claims . . . are subject to arbitration"). Plus, the grievance process requires employees to identify the "provisions of the Agreement alleged to have been violated" without saying anything about allegedly violated statutes. CBA § 5.3. Perhaps *one* reading of the CBA is that these references to contractual violations could be construed to somehow cover statutory violations too. But the CBA could also be read to not include them. Thus, the Court can hardly conclude that it clearly and unmistakably subjects them to arbitration.

Indeed, Excalibur has cited no case holding that an incorporation clause required arbitration of statutory claims without more language specifically subjecting those claims to arbitration. To the contrary, the cases it relies on show what is lacking here but what would render the CBA clear and unmistakable on that point: an explicit nexus between claims arising under the incorporated statutes and the arbitration requirement. Its main case, *Singletary*, involved a bargaining agreement with a non-discrimination provision stating that "[a]ny and all claims . . . under any federal or state employment law shall be exclusively addressed . . . under the grievance and arbitration provisions of this Agreement." 57 F. App'x at 163. And that is precisely the language that the Fourth Circuit emphasized when finding a clear and unmistakable waiver. *See id.* at 164. The

12

agreement in *Aleman v. Chugag Support Services, Inc.* was even more specific when defining the claims subject to "binding arbitration": "a grievance shall include any claim by an employee that he has been subjected to discrimination under Title VII" or other anti-discrimination laws. 485 F.3d 206, 209, 216 (4th Cir. 2007). And in *14 Penn Plaza*, the Supreme Court dealt with an agreement specifying that "[a]ll such claims" under enumerated statutes, including Title VII, "shall be subject to the grievance and arbitration procedure (Articles V and VI) as the sole and exclusive remedy for violations." 556 U.S. at 252.

In none of these cases, then, did an incorporation clause like the one here salvage an otherwise inadequate waiver by itself. Instead, the bargaining agreements connected the incorporated statutes to the mandatory grievance-and-arbitration procedures and subjected claims arising under the laws to those procedures. But for all the reasons discussed, this CBA lacks such a connection. The anti-discrimination provision never references the grievance procedure, and the grievance provisions themselves focus on violations of the agreement rather than statutes. And although this incorporation clause might mean that violations of some statutes are also violations of the CBA, that convergence shows only that the "contractual rights and statutory rights [are] coterminous," not that the latter rights are clearly and unmistakably subject to the mandatory grievance procedure. *Mathews*, 649 F.3d at 1207.

These may be fine distinctions. But the clear-and-unmistakable standard calls for this line-drawing because "the right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a CBA." *Wright*, 525 U.S. at 80. Against that backdrop, "[i]t is neither unattainable nor unreasonable to expect parties to a collective bargaining agreement to clearly state those statutory claims that they intend to confine to arbitration." *Cloutier*, 996 F.3d at 437. Because Excalibur and the union did not do so here for Title VII claims, the courthouse

13

doors remain open to Razzak.

### IV. Conclusion and Order

For all the above reasons, it is hereby **ORDERED** that Defendant's Motion to Dismiss and Compel Arbitration, ECF No. 8, is **DENIED**.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: December 17, 2024